UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | |
|---|---|
| AMANDA CORTES, AMANDA GARCIA, NATALIE TIRADO, and DARLENE GALBERT, individually and on behalf of all similarly situated employees,<br>    *Plaintiffs*,<br>    *v.*<br>ARMOR-ALL PROTECTION LLC and ANTONE MAROON DEEK d/b/a THE ALARM GROUP,<br>    *Defendants.* | Civil No. 3:15cv1788 (JBA)<br><br>May 23, 2016 |

**RULING DENYING MOTION TO DISMISS**

Plaintiffs Amanda Cortes, Amanda Garcia, Natalie Tirado, and Darlene Galbert brought this suit individually and on behalf of all similarly situated employees, alleging violations of the Fair Labor Standards Act ("FLSA"), 29 U.S.C. §§ 201 *et seq.* (Count One) and the Connecticut Minimum Wage Act ("CMWA"), Conn. Gen. Stat. §§ 31-58 *et seq.* (Count Two); seeking a declaratory judgment that they were misclassified as independent contractors (Count Three); and alleging unjust enrichment (Count Four). In addition, Plaintiffs sued Defendants individually for: intentional infliction of emotional distress (Counts Eight, Thirteen, Seventeen, and Twenty-One); negligent infliction of emotional distress (Counts Nine, Fourteen, Eighteen, and Twenty-Two); common law and statutory wrongful discharge (Counts Seven, Sixteen, and Twenty); and discriminatory employment practices in violation of Conn. Gen. Stat. § 46a-60 (Counts Five, Six, Ten, Eleven, Fifteen, and Nineteen) and Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e (Counts Twenty-Three through Twenty-Eight). Defendants now move [Doc. # 24] to dismiss Plaintiff's claims. For the following reasons, Defendants' motion is denied.

I.   **Factual Background**

The following facts, alleged in Plaintiffs' Amended Complaint [Doc. # 23] are relevant to this motion to dismiss. Defendants employed Plaintiffs as telemarketers from June 2014 (in the case of Plaintiffs Cortes and Garcia), March 2014 (in the case of Plaintiff Tirado), or late 2013 (in the case of Plaintiff Galbert) until September 3, 2014 (in the case of Plaintiffs Cortes, Garcia, and Tirado) or July 18, 2014 (in the case of Plaintiff Galbert). (Am. Compl. ¶¶ 10–15.) "All Plaintiffs were paid $9.00 per hour plus commission based on their sales of alarms." (*Id.* ¶ 19.) "Defendants employed telemarketers, including all of the named Plaintiffs . . . as independent contractors instead of employees." (*Id.* ¶ 20.) "Therefore, Defendant did not have to pay payroll taxes, unemployment taxes, workers' compensation insurance premiums or other related taxes or expenses associated with the hiring or remuneration of employees." (*Id.*)

Defendants had "a policy of 'mandatory Saturdays,' wherein employees, including Plaintiffs were periodically required to take an extra four to eight hour shift on Saturday in addition to the normal Monday through Friday schedule." (*Id.* ¶ 34.) As a result, on weeks in which the telemarketers were required to take a "mandatory Saturday," they worked more than 40 hours per week. (*Id.* ¶ 35.) "Plaintiffs were paid using the same $9.00 per hour plus commission formula for the entire workweek, even when it exceeded 40 hours due to 'mandatory Saturdays.'" (*Id.* ¶ 36.) "The 'mandatory Saturday' policy was employed when the previous or next week contained a holiday . . . ." (*Id.* ¶ 37.)

Thus, although Plaintiffs Tirado and Galbert, as well as "other putative class members worked a full 40 hours from Monday, May 11, 2014 through Friday, May 16, 2014," on "Saturday, May 17, 2014, the Defendants demanded that" Plaintiffs "work an

2

additional four hours," without paying them time and a half for their hours in excess of forty. (*Id.* ¶¶ 39–41.) "Similarly, after working full 40 hour workweeks in the summer of 2014, Plaintiff Galbert worked at least a mandatory four hours without receiving overtime . . . on the following Saturdays . . . : June 14; June 21; June 28; July 5; [and] July 12."[1] (*Id.* ¶ 42.) "When working these Saturdays during the summer of 2014, Plaintiff Galbert worked with fellow employees who had also worked 40 hour workweeks with her." (*Id.* ¶ 43.)

"Plaintiffs Tirado and Galbert worked 'mandatory Saturdays' resulting in workweeks exceeding 40 hours on other occasions with uncompensated overtime . . . but are unable to recall the exact dates without examining Defendants' payroll records." (*Id.* ¶ 44.) Likewise, Plaintiffs Garcia and Cortes assert that they too worked "four hour Saturday shifts after . . . five day, 40 hour workweeks . . . resulting in four hours of overtime compensated at the straight-time rate," but they "are unable to recall the exact dates without examining payroll records." (*Id.* ¶ 45.)

II. **Discussion**[2]

Defendants seek to dismiss Plaintiffs' Title VII, FLSA, and unjust enrichment

---

[1] The Amended Complaint additionally alleges that Ms. Galbert worked July 19, July 26, August 2, August 9, August 16, and August 23, 2014 (Am. Compl. ¶ 42), but Plaintiffs withdrew these claims in their Opposition [Doc. # 25].

[2] "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). Although detailed allegations are not required, a claim will be found facially plausible only if "the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* Conclusory allegations are not sufficient. *Id.* at 678–79; *see also* Fed. R. Civ. P. 12(b)(6).

claims on the grounds that: (1) three of the plaintiffs did not receive right to sue letters from the Equal Employment Opportunity Commission ("EEOC") for their Title VII claims; (2) Plaintiffs' FLSA claims are insufficiently specific; and (3) Plaintiffs' unjust enrichment claim fails to state a cause of action. The Court addresses each of these arguments in turn.

### A. Title VII

Title VII requires plaintiffs to exhaust their administrative remedies by timely filing a complaint with the EEOC, obtaining a right-to-sue letter, and filing suit within ninety days of the receipt of that letter. 42 U.S.C. § 2000e-5(e)–(f).

Defendants contend that because the right-to-sue letters attached to Plaintiffs' Amended Complaint state that Plaintiffs' claims before the EEOC were on the basis of the Age Discrimination in Employment Act ("ADEA") rather than Title VII, Plaintiffs have not exhausted their administrative remedies with respect to their Title VII claims. While Defendants are correct that the right-to-sue letters reference the ADEA, Plaintiffs' Opposition explains that this was due to a scrivener's error, and attaches corrected right-to-sue letters, mooting Defendants' claim.[3] For that reason, Defendants' motion to dismiss Counts Twenty-Three through Twenty-Eight is denied.

### B. FLSA

Defendants next argue that Plaintiffs' FLSA claims should be dismissed because they have not sufficiently alleged that they were unlawfully denied overtime. Under 29 U.S.C. § 207(a)(1), "no employer shall employ any of his employees . . . for a workweek

---

[3] It is notable that Defendants do not respond to Plaintiffs' argument in their Reply. (*See generally* Reply [Doc. # 27].)

longer than forty hours unless such employee receives compensation for his employment in excess of [forty hours] at a rate not less than one and one-half times the regular rate at which he is employed." "[I]n order to state a plausible FLSA overtime claim, a plaintiff must sufficiently allege 40 hours of work in a given workweek as well as some uncompensated time in excess of the 40 hours." *Lundy v. Catholic Health Sys. of Long Island Inc.*, 711 F.3d 106, 114 (2d Cir. 2013); *see Nakahata v. New York-Presbyterian Healthcare Sys., Inc.*, 723 F.3d 192, 201 (2d Cir. 2013) ("To plead a plausible FLSA overtime claims, Plaintiffs must provide sufficient detail about the length and frequency of their unpaid work to support a reasonable inference that they worked more than forty hours in a given week."). "Determining whether a plausible claim has been pled is a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Lundy*, 711 F.3d at 114 (internal quotation marks omitted).

In contrast to those cases in which the Second Circuit has found a complaint to be insufficiently specific, *see, e.g., id.* at 114–15;[4] *Nakahata*, 723 F.3d at 201,[5] Plaintiffs here have done much more than "rephras[e] the FLSA's formulation" for when overtime is required, *Dejesus v. HF Mgmt. Servs.*, LLC, 726 F.3d 85, 88 (2d Cir. 2013). Rather, they have alleged: the dates on which they started and ended work; their positions; that they worked

---

[4] As the Second Circuit explained in *Dejesus*, 726 F.3d at 88–89 ("The allegations in Lundy . . . failed because of arithmetic: tallying the plausible factual allegations, we could not get beyond forty hours in any given week, and therefore to a plausible claim for overtime.").

[5] In *Nakahata*, the Second Circuit held that although Plaintiffs' allegations "raise[d] the possibility that Plaintiffs were undercompensated . . . absent any allegation that Plaintiffs were scheduled to work forty hours in a given week, these allegations do not state a plausible claim for . . . relief." 723 F.3d at 201.

5

at least forty hours every week; that on particular Saturdays, they were required to work an additional four to eight hours; that they were paid $9.00 per hour plus commission regardless of whether they had worked over forty-hours in a given week; and they have identified at least eight Saturdays on which they and other telemarketers worked at least forty-four hours and received pay only at straight-time rates. These allegations suffice to state a plausible claim for relief, and that is all that is required at this stage.

Defendants' arguments to the contrary are based primarily on their reading of Plaintiffs' complaint as alleging that "mandatory Saturdays" were only required on weeks before or after a holiday. (*See* Mem. Supp. Mot. Dismiss [Doc. # 24] at 5–13; *see generally* Reply.) Although the language Defendants cite—"The 'mandatory Saturday' policy was employed when the previous or next week contained a holiday that resulted in a four day work week" (Am. Compl. ¶ 37)—may be read as implying that the mandatory Saturday policy pertained only to such weeks, it is equally plausible to interpret this paragraph as stating that the mandatory Saturday policy was employed on various occasions, including weeks before or after those containing a holiday. "[C]onstruing the complaint liberally" and "drawing all reasonable inferences in the plaintiff's favor," *Chambers v. Time Warner, Inc.*, 282 F.3d 147, 152 (2d Cir. 2002), the Court does not agree that Defendants' interpretation of Plaintiffs' complaint is the only plausible interpretation. Because Plaintiffs have alleged sufficient facts to make out a colorable claim for overtime violations, Defendants' motion to dismiss Count One is denied.

### C. Unjust Enrichment

Defendants' final claim is that Plaintiff's unjust enrichment count should be dismissed because it "fails to state a cause of action." (Mem. Supp. at 13.) Defendants,

6

however, do not specify *how* the complaint fails to state a cause of action except to argue that contrary to Plaintiffs' allegations, Plaintiffs Tirado and Cortes "were denied unemployment benefits because both were deemed to have left their jobs" rather than because they were not classified as employees. In so arguing however, Defendants misapprehend the procedural posture of this case. Unlike in the summary judgment context, at the motion to dismiss stage, factual allegations in a complaint are "accepted as true." *Iqbal*, 556 U.S. at 678. As such, Defendants cannot base their argument for the dismissal of Plaintiffs' unjust enrichment claim on the alleged falsity of their claims. Because that is the only argument they raise, their motion to dismiss Count Four is denied.

### III. Conclusion

For the foregoing reasons, Defendants' Motion [Doc. # 24] to Dismiss is DENIED.

IT IS SO ORDERED.

    /s/
Janet Bond Arterton, U.S.D.J.

Dated at New Haven, Connecticut this 23rd day of May 2016.